# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00100-CV

**Valerie Noel Tidwell, Appellant**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

## FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT
## NO. 11,204, HONORABLE W. T. MCDONALD, JR., JUDGE PRESIDING

Following a jury trial, appellant Valerie Tidwell appeals from the district court's decree terminating her parent-child relationship with her daughter D.T. and appointing the Texas Department of Protective and Regulatory Services as the child's managing conservator. Tidwell raises three issues contending that legally and factually insufficient evidence supports the jury's findings that her parental rights should be terminated and that termination is in the child's best interest. We will affirm the decree of termination.

### Background

D.T. was born in Virginia on March 24, 1997. By April 1998, appellant had moved to Giddings and was living with a friend. When the friends had a disagreement about sharing expenses, appellant moved in with her boyfriend and his mother. At the time, appellant worked at Wal-Mart. On Sunday, April 26, 1998, appellant went to work while D.T. stayed with appellant's

boyfriend's mother. That night, appellant gave D.T. a bath and noticed that she had a rash around her buttocks, which she treated with ointment. On Monday, April 27, appellant had the day off and spent it with D.T. Appellant testified that while bathing D.T. that night she noticed D.T. still had a rash but it seemed a little bit better. On Tuesday, April 28, appellant awoke at 7:30 a.m. and because she was late for work asked her boyfriend to take D.T. to her babysitter's house in Lexington. Later that morning when the babysitter changed D.T.'s diaper, she noticed D.T. had burn marks on the inside of her thighs, strips of blisters on her buttocks, and some of D.T.'s skin had come off in the diaper. She called appellant at work between 9:00 and 9:30 a.m. and told appellant about D.T.'s condition. Appellant told the babysitter that she would ask her manager for time off so that she could pick up D.T. and take her to the hospital. Later, appellant called the babysitter and told her that she would pick up D.T. about 5:15 p.m. She did not get to the babysitter's house until 6:00 p.m. After picking up D.T., she did not go directly to the hospital but first stopped at her boyfriend's house before taking D.T. to the hospital at about 7:00 p.m.

Randa Buchanan, an investigator with Child Protective Services, testified that she was called to Smithville Hospital where she examined D.T., interviewed appellant, and talked with the hospital staff. She was "shocked" when she saw the burns on both sides of D.T.'s buttocks and the outer part of her vaginal area. She also noticed a bruise on D.T.'s right ear, two burns between the child's first finger and thumb on her left hand, and a burn on her abdomen. Photographs of D.T.'s burns taken at the hospital were admitted at trial. Appellant initially told Buchanan she had no idea why the child had the burns and that the reason she had not brought D.T. to the hospital sooner was that she could not get permission to leave work. When appellant refused to tell Buchanan her

2

supervisor's name, Buchanan became suspicious of her statement. Later, appellant admitted to Buchanan that she had not asked her manager for any time off from work.

Lieutenant Nathan Lapham with the Giddings Police Department testified that he met with appellant to discuss D.T.'s injuries. Over two days, appellant gave three written statements to police, all of which were admitted into evidence. At their first meeting, appellant told Lapham that she had no idea how D.T. was burned, and in her first written statement she provided no explanation for D.T.'s burns. In her second written statement she explained that D.T.'s burns were caused when she gave D.T. a bath that was too hot. Randy McReynolds, an investigator with Child Protective Services, testified that D.T.'s burns were inconsistent with burns from a hot bath or chemicals. The day after appellant gave her first two statements, she gave a third written statement in which she confessed to spanking D.T. with a hot curling iron in a moment of anger. She stated that she did not realize she had the hot curling iron in her hand when she spanked D.T.

Appellant was indicted for the offense of injury to a child. *See* Tex. Penal Code Ann. § 22.04 (West Supp. 2000). She pleaded *nolo contendere* to knowingly and recklessly causing serious bodily injury to D.T. by burning her and was placed on deferred adjudication community supervision.

On April 29, 1998, the Department was appointed temporary sole managing conservator. The Department developed a service plan in an attempt to reunify appellant and D.T. Under the plan, appellant was to have a psychological evaluation, attend anger management as well as parenting classes, make child support payments of $50 per month to the court, and provide information to the court regarding alleged biological fathers and relatives. After appellant failed to

3

follow through with most aspects of the Department's service plan, in July 1999 the Department petitioned the district court for sole managing conservatorship of D.T. and sought to terminate the parent-child relationship between appellant and D.T. The Department urged three statutory bases for termination, Family Code sections 161.001(1)(D), (E) and (L)(ix).[1] *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), and (L)(ix) (West Supp. 2000). Following presentation of the evidence, the district court submitted a broad-form question to the jury asking if appellant's parental rights to D.T. should be terminated. The jury charge included lengthy information setting out the three statutory bases urged by the Department and instructing the jury that they must find clear and convincing evidence to support one of the bases. The instruction also stated that "it must also be proved by clear and convincing evidence that termination of the parent-child relationship must be in the best interest of the child." The jury answered the question "yes," and, in accordance with their answer, the district court terminated the parent-child relationship.

**Discussion**

---

[1] Section 161.001 provides that the court may terminate the parent-child relationship if the court finds by clear and convincing evidence that the parent has (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; and (L)(ix) has been placed on deferred community supervision for being criminally responsible for serious injury of a child under section 22.04 of the Penal Code. Tex. Fam. Code Ann. § 161.001(D), (E), & (L)(ix) (West Supp. 2000).

A court may terminate a parent-child relationship if it finds by clear and convincing evidence that a parent has engaged in *any* of the listed conduct in section 161.001(1) of the Family Code and that termination is in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(1), (2); *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). At trial in a termination case, the Department is held to a clear and convincing standard of proof, which has been defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980).

Appellant contends that the evidence is insufficient to support the decision to terminate her parental rights to D.T. based on section 161.001(1)(D), (E) or (L)(ix). *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (L)(ix). Additionally, she contends that the evidence did not show that termination of the parent-child relationship was in the best interest of the child. *See id.* at § 161.001(2).

In deciding a legal sufficiency challenge in a parental rights termination case, the appellate court considers only the evidence and inferences tending to support the findings and disregards all evidence to the contrary. *See Leal v. Texas Dep't of Protective & Regulatory Servs.,* 25 S.W.3d 315, 321 (Tex. App.—Austin 2000, no pet.) (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951)). If more than a scintilla of probative evidence supports the findings, they must be upheld. *Leal*, 25 S.W.3d at 321. In determining a factual sufficiency challenge, we consider a neutral review of all the evidence, both for and against the findings, and will set aside the judgment only if proof of the facts is so obviously weak

5

or the findings so contrary to the weight of the evidence as to be clearly wrong and unjust.  *See id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza*, 395 S.W.2d at 823).  We will not substitute our judgment for that of the trier of fact merely because we reach a different conclusion. *See Westech Eng'g., Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

### *Evidentiary Support for Section 161.001(1)*

Appellant contends in her first and second issues that the evidence is legally and factually insufficient to support the decision to terminate her parental rights to D.T. based on sections 161.001(1)(D), (E) and (L)(ix). *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (L)(ix) (West Supp. 2000).

Section 161.001(1)(L)(ix) provides that a court may terminate the parent-child relationship if the court finds by clear and convincing evidence that the parent has been convicted or placed on community supervision including deferred adjudication community supervision for being criminally responsible for the serious injury of a child under Penal Code section 22.04.  Appellant contends on appeal that section 161.001(1)(L)(ix) as applied to her is unconstitutional.

At trial, appellant did not object to the admission of evidence of her *nolo contendere* plea and deferred adjudication disposition or present the district court with a constitutional argument. Because appellant failed to raise her constitutional contention before the district court, she has not preserved it for appellate review.  *See In re W.A.B.*, 979 S.W.2d 804, 808 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (constitutional issue not raised in trial court is waived on appeal); Tex. R. App. P. 33.1(a).

6

Regarding appellant's contention that the evidence is legally and factually insufficient to support termination of the parent-child relationship, admitted as evidence at the termination proceeding was a certified copy of the order placing her on deferred adjudication community supervision for ten years for the offense of injury to a child. This evidence alone is sufficient to sustain the jury's finding that there was clear and convincing evidence to support termination based on section 161.001(1)(L)(ix). Issues one and two are overruled.

### *Evidentiary Support For Section 161.001(2)*

In her third issue, appellant contends that the evidence is legally and factually insufficient to support the jury's finding that terminating the parent-child relationship was in D.T.'s best interest. The Texas Supreme Court has recognized several factors that may be considered in determining whether termination is in a child's best interest:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse of the acts or omissions of the parent.

*Holley*, 544 S.W.2d at 372 (footnotes omitted). This list of relevant considerations is not exhaustive; other factors may be considered when appropriate. *See id.* Likewise, a fact finder is not required to consider all of the listed factors. *See id.* The record in this case contains evidence regarding several of the *Holley* factors.

7

Since June 1998, D.T. has been living with appellant's aunt. She testified about how appellant and D.T. related since she had been taking care of D.T. She testified that when appellant would come to visit D.T., the little girl would not run to greet her mother. In fact, she seemed not to notice her and would just continue playing. After a visit, whenever appellant would leave, D.T. did not cry or express any sadness about her leaving. Regarding the danger of emotional or physical danger to D.T. now or in the future, appellant's aunt explained that appellant had given her several inconsistent versions about how D.T. had been burned. Because of appellant's several versions about how D.T. was burned, appellant's aunt believed that appellant intentionally inflicted the burns and was concerned about there being possible future events. Appellant's aunt testified that while she had been caring for D.T., she told appellant she was welcome to call her and ask about how D.T. was doing. Appellant called her only three times and never asked about D.T.'s welfare. Appellant's aunt believed that appellant was young and had a lot of growing up to do. Appellant testified that she had left home when she was fifteen years old and had led a "wild lifestyle." Appellant's aunt thought D.T. needed a stable, loving, and nurturing home. Appellant's aunt also testified that because appellant had not made significant changes in her lifestyle and had not followed through with the Department's reunification plan she did not think placing D.T. back with appellant was in D.T.'s best interest.

Wendy Pickett, a caseworker with Child Protective Services, testified that appellant was offered several special services including parenting classes and psychological counseling. Appellant, however, did not attend any counseling sessions in 1999. Appellant initially attended the parenting classes but eventually began missing classes. Appellant also had scheduled visitation with D.T. four times per month. This schedule, however, was reduced by the court to visits twice a month

8

because appellant was not consistent with her visits. Both Pickett and Pacha testified that they told appellant they were willing to help her with transportation to visit with D.T. Out of forty-eight possible visits, appellant missed twenty-four. From June 1999 to October 1999, appellant visited D.T. only three times. Although appellant testified that she missed several scheduled visits with D.T. because of car trouble, Pickett testified that appellant offered no explanation or reason for missing her parent-child visits. Pickett believed it was in D.T.'s best interest to terminate the parent-child relationship.

Appellant testified before the jury that she was currently working at the Chevron gas station in Giddings. During rebuttal, however, the manager of the Giddings Chevron testified that appellant did not work at the station and in fact had been fired the Thursday before trial because she had been videotaped during work helping another employee steal merchandise. Additionally, despite confessing to police that she burned D.T. with a hot curling iron, at the termination proceeding appellant recanted her confession, denied hitting D.T. with a hot curling iron, and provided alternative explanations about how D.T. was burned. It is relevant to note that appellant testified that neither her boyfriend nor her boyfriend's mother caused D.T.'s burns.

We hold that the evidence is legally sufficient to support the jury's finding that termination was in D.T.'s best interest. Additionally, the evidence is factually sufficient as the proof of the facts is not so obviously weak or the finding so contrary to the weight of the evidence as to be unjust. Appellant's third issue is overruled.

We affirm the district court's decree terminating the parent-child relationship between appellant and D.T.

9

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed:   January 25, 2001

Do Not Publish